**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**


**UNITED STATES OF AMERICA**

      **Plaintiff,**

**v.**


**WILLIAM SHERMAN KIRKPATRICK,**

      **Defendant.**               **Case No. 08-cr-30258-1-DRH**



**<u>SENTENCING ORDER</u>**


**HERNDON, Chief Judge:**


      This case was presented for re-sentencing following a Seventh Circuit opinion vacating the previous sentence and remanding it for proceedings consistent with the opinion. ***See, United States of America v. William S. Kirkpatrick***, No. **09-2382, 7th Circuit, Dec. 14, 2009.** The prior disposition was handled by District Judge Michael J. Reagan, who recused upon remand and the case was randomly reassigned to this judge.

      A hearing was conducted on March 18, 2010, with Assistant United States Attorney Angela Scott, defense counsel Renee Schooley and the defendant present. As in the prior hearing, no objections were raised by the parties to the

presentence report, however, the court raised an objection to two findings, based on the record, Judge Reagan's prior findings and the opinion of the Circuit court. The court referred to the transcript wherein, Judge Reagan found that the defendant had materially lied to him in a letter regarding his authority, granted by his DEA handler, to possess and transport the firearms in issue to Illinois for the purpose of gifting them to another person. Judge Reagan found that the fabrication qualified the defendant for an obstruction of justice enhancement under §3C1.1 of the Guidelines. This was an enhancement that received the approval of the appellate court. Judge Reagan declined to withdraw the defendant's acceptance of responsibility under §3E1.1, although he clearly had to discretion to do so, if he found it was appropriate.

The sentencing landscape has changed considerably since the landmark case of **United States v. Booker, 543 U.S. 220 (2005).** Gone are the days when the sentencing court merely applies the sentencing guideline to a case, explaining to the defendant that his hands are, for all practical purposes, tied. That, within some range, his sentence is predetermined once the variables of his offense conduct, acceptance of responsibility and criminal history are plugged into the formula. With the addition of both **Rita v. United States, 551 U.S. 338 (2007)** and **Gall v. United States, 552 U.S. 38 (2007)**, the Supreme Court found that the proper procedure, as a starting point and initial benchmark, is for the sentencing court to correctly calculate the sentencing range as determined by the Guidelines. Each party is to be given an opportunity to argue for whatever sentence he or she deems

appropriate in the case.  Thereafter, the district judge is to consider all of the section 3553(a) factors, without giving a presumption of reasonableness to the Guidelines. An individualized assessment of the factors as weighed against the facts in the case must be made.  According to the nation's highest court:  "If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." **_Gall,_ 552 U.S. at 597.**

When looking to depart from the applicable Sentencing Guidelines, the Court considers the following relevant factors outlined in **18 U.S.C. § 3553(a)**:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(I) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**18 U.S.C. § 3553(a)**.

"Although a sentencing judge need not articulate the § 3553(a) factors in a checklist fashion . . . the judge 'is required to consider the § 3553(a) factors and

to address any substantial arguments the defendant made.' " **U.S. v. Panice, --- F.3--, No. 08-3323, 2010 WL 935757 at \*14 (7th Cir. Mar. 17, 2010) (citing United States v. Perez, 581 F.3d 539, 548 (7th Cir. 2009); United States v. Mendoza, 576 F.3d 711, 721 (7th Cir. 2009))**.

In the course of its analysis, the starting point being the correct calculation of the sentencing guideline, to be used as advice from the Sentencing Commission, this court, like the prior, applied the obstruction of justice enhancement for lying to Judge Reagan in an effort to impact his sentencing decisions.  The obvious materiality of the defendant's statements to the prior judge and the clear falsehood of those statements, based on the credibility of the DEA agent to whom they were purportedly made, but who denied having granted the authority, makes the enhancement unimpeachable.  That the defendant could possibly think anyone associated with this system would believe a DEA agent would give a convicted felon authority to cross state lines with firearms is beyond comprehension.

The next part of the analysis is whether, as Judge Reagan chose to do, this judge should continue to allow the benefit of acceptance of responsibility despite the assessment of obstruction of justice and the defendant's conduct.  In the Application Notes to U.S.S.G. §3E1.1, at note 4, it is clear that enhancing for Obstruction of Justice and granting Acceptance of Responsibility are typically mutually exclusive except in the extraordinary case.  Furthermore, note 1(b) points out that the failure to withdraw from criminal conduct is a factor the sentencing

judge can take into account when deciding whether to grant the benefit of responsibility acceptance.  The court, at bar, relies most heavily upon the inconsistency in enhancing for obstruction, on one hand, yet believing a defendant has accepted responsibility on the other.  The court does not believe this defendant has, in the legal sense or otherwise, accepted responsibility.  Furthermore, but not the primary reason, this defendant did continue to commit crimes and this failure to withdraw lends support to the court's withholding of the acceptance points.

The consequence of this analysis is that the advice from the Commission on the calculation of the defendant's Guideline treatment for the offense of conviction is as follows:

Based on a guilty plea to one count of Felon in Possession of Firearms, pursuant to 18 U.S.C. § 922(g)(1):

| | |
|---|---:|
| Base Offense Level: U.S.S.G. § 2K2.1(a)(4)(A) (defendant convicted of previous crime of violence) | 20 |
| Adjustment for Obstruction of Justice: U.S.S.G. § 3C1.1 | 2 |
| Total Offense Level | 22 |

The defendant's criminal history score, about which there was no dispute, was 3 points, establishing a criminal category of a II.

Following the court's findings for the guideline calculation, defense counsel stated that neither she nor her client disputed the court's findings and she ultimately argued for a sentence at the low end of the guideline range based on those findings.

The court further found that the defendant's exposure was as follows, under the statute, the defendant's maximum prison sentence was ten years, his maximum term of supervision following incarceration was three years, probation was an option for a term of one to five years and the fine that could be assessed could not exceed $250,000. As for the advice from the Sentencing Commission, for the total offense level of 22 and criminal history category of II, the incarceration exposure ranged from 46 months to 57 months, the supervision range was from two to three years, no eligibility for probation and the fine range was from $7500.00 to $75,000. Of course, the special assessment was obligatory under either mechanism of sentencing.

The court recognizes, and did so at sentencing, that 18 U.S.C. § 3661 specifically authorizes the court to examine any conduct of the defendant in order to impose a sentence. This does not limit the court to convicted crimes. Clearly, the court cannot sentence on the basis of innuendo and rumor. The court must look to reliable evidence when considering this conduct. Here we have the defendant's own words.

In examining the nature and circumstances of the offense, this clearly is a peculiar case. The defendant was arrested for possessing firearms, an illegal act for a convicted felon, and before he could enter a plea or be sentenced he lies to his arresting officer, tells outrageous stories to a federal agent that turn out to be false, tells his cell mates of his plan to kill a federal agent and then lies to a federal judge in preparation for his sentencing. It is a serious enough crime for a convicted felon

to have firearms and the level of incarceration often varies depending on one's history, the types of firearms and what one does with those firearms. Essentially, in this case, however, Mr. Kirkpatrick just kept committing more crimes to compound his wrongdoing. He must be held accountable.

As for the defendant's history and characteristics, he does not have the kind of background that would suggest a person that would, upon arrest, just continually commit crimes as happened here. He does, however, have serious weapons charges in his history, including an armed robbery conviction, that suggest Mr. Kirkpatrick is no stranger to the criminal justice system. His work as an informant, however, would seem to suggest an approach of honesty with law enforcement, not dishonesty.

When considering the need for the sentence imposed to reflect the seriousness of the crime, promote respect for the law, and provide just punishment for the offense, it is clear that the first two factors of seriousness and history and characteristics, build into this factor. Defense counsel argued that the guideline advise adequately take into account all that must be accounted for with Mr. Kirkpatrick and that a low end guideline sentence is adequate. Likewise, she argued that deterrence and protection of the public are wrapped into any concern the court may have for the future with regard to Mr. Kirkpatrick within that guideline. The court disagreed. The court on the latter two factors, finds that Mr. Kirkpatrick's lies and lack of integrity of such magnitude, suggest that he is a good candidate for re-offending and will likely be a recidivist.

In the court's analysis, the Commission's advice takes into account the weapons offense and the lie to the judge. It does not, however, take into account the lies to the agents and the threat to one agent. Those lies and threat, at the very least, caused great disruption to the operation of government. A great deal of time, something in the neighborhood of 200 hours, was absolutely wasted chasing down defendant's stories. The burden on the government was, to understate it, substantial. The emotional and physical problems for the threatened agent, while some can identify with through personal experience or imagination, can really only be known by the agent and his family. Consequently, the court finds that the guideline calculation does not appropriately sentence the defendant because it does not hold him accountable for all of his misconduct, conduct which is illegal and conduct which he chose to put in the case as he chose to tell agents during the investigation of this case or to tell other inmates about an agent involved in this case. Furthermore, a variance, which results in a disparity, is warranted since this case is unlike any felon in possession case this judge has had experience with. The conduct discussed goes well beyond possessing firearms and well into another realm of illegal conduct. Other felons in possession simply do not have elements of this conduct with which the court must deal in a sentencing analysis.

So where does the court look for a guidepost on how to vary? The circuit court opinion provides guidance by suggesting that a sentencing judge should first look, when examining illegal conduct, how the guidelines treat that conduct. The government provides a treatment, in its sentencing memorandum based on the

hypothetical presumption that the defendant has been charged and convicted of the conduct at issue.  While that treatment makes complete sense and there was a discussion in the appellate case that suggests it is one avenue to analyzing this case, there seems to this judge to be another method that is in keeping with the advice from the Commission.

The defendant communicated with agents in this case and apparently confessed to a number of drug crimes and murders.  He supplied intricate details of these crimes that lent credence to the integrity of his statements.  The agents would have been derelict in the execution of their commissions had they not investigated in earnest the stories and the defendant along the way.  Many, many hours of law enforcement hours were expended.  Simultaneous to that string of stories, the defendant advised cell mates that he planned to murder an ATF agent.  That threat required many law enforcement hours, as well, to confirm or dispel.  In the end, it was all a hoax.  To say that the governmental services of this segment of law enforcement was disrupted is an understatement.  One can look to Section 2A6.1 of the Guidelines.  The section covers threatening or harassing communications; hoaxes, and false liens.  Under the specific offense characteristics, (§ 2A6.1(b)(4)), there is guidance for substantial disruption of governmental services, which provides for a four level increase.  The defendant's conduct, though uncharged and therefore lacking a conviction, yet available to the court for consideration, fits perfectly within this specific offense characteristic.  The court looks to this section for an analogy and advice as to how the Commission would view the issues at bar.

Consequently, in accord with this advice, the defendant's wrongful and illegal conduct relative to the agents in this case, would by comparison, bring his offense level to a 26. With his criminal history category of a II, his advisory sentencing range would be 70 to 87 months. The court, however, simply views this as an analogy, but one which provides it with valuable advice of what the Commission would recommend with the conduct pursued by the defendant in this case.

The court has accepted the advice of the Commission in this case, but in varying chooses to impose a sentence outside of the guidelines, though within the parameters of the range discussed above. Therefore, because the court finds that the defendant possessed firearms after having been convicted of two serious felonies involving firearms, further because the defendant gave the arresting officer a story about his reason for possessing the firearms which the court finds to be without credibility, further because the defendant engaged in post-arrest conduct which amounted to giving false information to federal agents, resulting in substantial disruption of governmental services, and further because the defendant threatened the life of a federal agent, placing said agent in apprehension of personal harm, resulting in further disruption of governmental services, and because the federal sentencing guidelines do not adequately account for all of the defendant's conduct, the court did impose a statutory sentence of 78 months, a term of supervised release of 3 years, a fine of $1000 and special assessment of $100. The fine and special assessment are due immediately and are to be paid through the Clerk of the District

Court.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years.  Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the United States Probation in the district to which he is released.

While on supervised release, the defendant shall not commit another federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court and which will be stated in the written judgment of the court.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days after being released on supervision and at least two periodic drug tests thereafter, not to exceed 52 tests in a one year period.

The defendant shall not possess a firearm or destructive device.

The defendant shall cooperate in the collection of DNA as required by law and directed by the probation officer.

In addition, the defendant shall comply with the following special conditions:

The defendant shall pay any financial penalty that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.  Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be paid in equal monthly installments of $35 or ten percent

of his net monthly income, whichever is greater, over a period of 32 months, to commence 30 days after release from imprisonment to a term of supervision.

The defendant shall provide the probation officer and the Financial Litigation Unit of the United States Attorney's Officer with access to any requested financial information.  The defendant is advised that the probation office may share financial information with the Financial Litigation Unit.

The defendant shall apply all monies received from income tax refunds, lottery winnings, judgments, and/or any other anticipated or unexpected financial gains to the outstanding court-ordered financial obligation.  The defendant shall immediately notify the probation officer of the receipt of any indicated monies.

Due to his history of substance abuse, the defendant shall participate as directed and approved by the probation officer in treatment for narcotic addiction, drug dependence, or alcohol dependence, which includes urinalysis or other drug detection measures and which may require residence and/or participation in a residential treatment facility.  The number of drug tests shall not exceed 52 tests in a one year period.  Any participation will require complete abstinence from all alcoholic beverages.  The defendant shall pay for the costs associated with substance abuse counseling and/or testing based on co-pay sliding fee scale as directed and approved by the United States Probation Office.  Co-pay shall never exceed the total costs of counseling.

Due to his history of mental health issues, the defendant shall participate in a program of mental health treatment, as directed by the probation

officer, until such time as the defendant is released from the program by the probation officer.

Due to the offense of conviction, along with his concealment of the firearms, the defendant shall submit his person, residence, real property, place of business, or vehicle to a search, conducted by the United States Probation Officers at a reasonable time and in a reasonable manner, based upon a reasonable suspicion of contraband or evidence of a violation of a condition of supervision.  Failure to submit to a search may be grounds for revocation.  The defendant shall inform any other residents that the premises may be subject to a search pursuant to this condition.

**IT IS SO ORDERED.**

Signed this 22nd day of March, 2010.

/s/   David R Herndon

**Chief Judge**
**United States District Court**